IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02516-WJM-KLM

AURARIA STUDENT HOUSING AT THE REGENCY, LLC, a Colorado limited liability company,

    Plaintiff,

v.

CAMPUS VILLAGE APARTMENTS, LLC, a Delaware limited liability company,

    Defendant.

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Auraria Student Housing at the Regency, LLC ("Plaintiff") brings this action against Campus Village Apartments, LLC ("Defendant"). Before this Court is Plaintiff's Early Motion for Partial Summary Judgment of Liability on its conspiracy to monopolize claim ("Motion"). (ECF No. 71.) For the reasons set forth below, Plaintiff's Motion is denied.

## I. BACKGROUND

The relevant facts, in the light most favorable to Defendant, the nonmovant, are as follows.

Plaintiff leases and operates an apartment complex in Denver under the trade name The Regency - Auraria's Student Housing Community, LLC (the "Regency.") (ECF No. 72-4 ¶ 3.) The Regency is dedicated to providing off-campus housing for students attending classes on the campus of the Auraria Higher Education Center campus ("Auraria Campus") in Denver. (*Id.* ¶ 4.) The Regency is located a few miles

away from the Auraria Campus. (ECF Nos. 75 pp. 6, 75-9.)

Defendant is a limited liability company whose sole member is the University of Colorado Real Estate Foundation ("CUREF"). (ECF No. 72-2 ¶ 2.) Defendant owns the Campus Village Apartments, another apartment complex dedicated to providing off-campus housing for students at the Auraria Campus. (*Id.* ¶¶ 2, 21.) Campus Village Apartments is located on land adjacent to the Auraria Campus. (ECF No. 72-21 p. 12.)

In response to a 2004 study that found that the Auraria Campus had a housing demand (ECF No. 72-5 p. 3), the University of Colorado Denver ("UCD") approached CUREF to construct student housing on land adjacent to campus. (ECF No. 72-21 p. 12.) CUREF formed Defendant in order to construct the Campus Village Apartments. (*Id.*) In 2004, UCD and CUREF entered into an agreement (the "2004 Agreement") whereby UCD agreed to: (1) assist in marketing the Campus Village Apartments; (2) institute a residency requirement for most full-time domestic freshmen and international students (the "New Students") to live at off-campus housing; (3) "exclusively refer" the New Students to the Campus Village Apartments; and (4) not participate in the development of another student housing project. (ECF No. 72-6 ¶¶ 1, 3, 4.)

In 2005, CUREF assigned the 2004 Agreement to Defendant, and Defendant issued $50.365 million in revenue bonds (the "2005 Bonds") through the Colorado Educational and Cultural Facilities Authority ("CECFA") to fund the construction of the Campus Village Apartments. (ECF Nos. 72-2 ¶¶ 21-25, 72-8.)

The Campus Village Apartments opened for the fall 2006 semester. (ECF No. 80-4 ¶ 3.) In order to minimize Defendant's risks associated with the new housing, UCD instituted a live-in requirement, whereby the New Students were required, during the

first two semesters of their enrollment at UCD, to reside at the Campus Village Apartments (the "Residency Requirement"). (ECF Nos. 72-11, 72-21 p. 12.)

In May 2008, UCD, CUREF, and Defendant entered into an operating agreement regarding the Campus Village Apartments (the "2008 Agreement"). (ECF Nos. 72-20, 72-21 p. 5.) Pursuant to the 2008 Agreement, UCD agreed to continue enforcing the Residency Requirement. (ECF No. 72-20 ¶ 2.1.) In return, Defendant gave UCD students placement priority at the Campus Village Apartments with a specific number of beds dedicated each year for UCD students. (*Id.* ¶ 2.3.)

In July 2008, Defendant borrowed proceeds from the sale of $54.055 million in bonds issued through CECFA to refinance the 2005 Bonds. (ECF No. 72-21 p. 3.)

During the 2012-2013 academic year, the rental cost for New Students living at the Campus Village Apartments was $7,390 per academic year, without parking or a meal plan. (ECF No. 72-33 pp.2-3.) During the 2011-2012 academic year, the lowest rental cost for the Regency was $4,750 per academic year, which included parking but not a meal plan. (ECF No. 72-32 p. 3.) Plaintiff alleges that it has lost business from New Students who would have chosen to live at the Regency if not for the Residency Requirement. (ECF No. 72-4 ¶ 14.)

On these facts, Plaintiff filed this action against Defendant on October 14, 2010. (ECF No. 1.) On February 7, 2011, Plaintiff filed an Amended Complaint alleging four claims for relief: (1) conspiracy to monopolize, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; (2) civil conspiracy; (3) interference with prospective business relations; and (4) interference with existing contractual relations. (ECF No. 19 ¶¶ 70-88.)

On May 3, 2013, Plaintiff filed a Motion for Partial Summary Judgment on its first claim (conspiracy to monopolize) pursuant to Federal Rule of Civil Procedure 56. (ECF No. 71.) On May 28, 2013, Defendant filed its Opposition to Defendant's Motion (ECF No. 75), and Plaintiff filed its Reply Brief in Support of its Motion on July 12, 2013. (ECF No. 80.)

This motion is now ripe for resolution.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

### III.  ANALYSIS

Section 2 of the Sherman Act prohibits conspiracy to monopolize any part of interstate trade or commerce.  15 U.S.C. § 2.  To succeed on a claim of conspiracy to monopolize, a plaintiff must establish: "(1) the existence of a combination or conspiracy to monopolize; (2) overt acts done in furtherance of the combination or conspiracy; (3) an effect upon an appreciable amount of interstate commerce; and (4) a specific intent to monopolize."  *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1026 (10th Cir. 1992) (internal citation omitted).  Because it is dispositive of the Motion, the Court will first examine whether Plaintiff has established that Defendant had a specific intent to monopolize.

"Specific intent to monopolize is the heart of a conspiracy charge[.]"  *Salco Corp. v. General Motors Corp.*, 517 F.2d 567, 576 (10th Cir.1975).  *See also Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369, 1377 (10th Cir. 1979) ("Although the offense of conspiring to monopolize appears to address the means by which competition is harmed, the gravamen of that offense is the intent to achieve the unlawful result.").  "If one party's intent to monopolize is not shared by another party, there can be no conspiracy to monopolize."  *Total Renal Care, Inc. v. W. Nephrology & Metabolic Bone Disease, P.C.*, 2009 WL 2596493 (D. Colo. Aug. 21, 2009) (internal citation omitted).  Specific intent to monopolize requires acting "with an intention to form or maintain a monopoly, that is, both to control prices and exclude competition."  *Nat'l Ass'n of Investors Corp. v. Bivio, Inc.*, 2013 WL 316021, at *5 (D. Colo. Jan. 28, 2013) (emphasis removed).  The Court will discuss each of these prongs in turn.

### A. Exclude Competition

Plaintiff argues that both Defendant's and UCD's specific intent to exclude competition can be inferred from the 2004 and 2008 Agreements. (*See* ECF Nos. 72 pp. 2.9-10, 72-6, 72-20, 80-11.) *See also Shoppin' Bag of Pueblo, Inc. v. Dillon Cos., Inc.*, 783 F.2d 159, 163 (10th Cir. 1986) ("Often no direct evidence of specific intent exists and inferences from conduct are necessary."). Specifically, Plaintiff argues that these agreements effectively destroyed competition for the apartment rental business of New Students who were subject to the Residency Requirement. (ECF No. 72 p. 2.09.) Plaintiff estimates that the Regency has lost 40-60 rentals per year due to the Residency Requirement. (ECF No. 72-4 ¶ 14.)

Defendant argues that its intent was to reduce the risk that UCD would switch to another student housing provider before the bonds used to fund the Campus Village Apartments were repaid. (ECF No. 75 p. 21.) Defendant further argues that it reduced that risk, not by intending to destroy competition in the student housing market, but by becoming UCD's designated housing provider. (*Id.*)

Similarly, Defendant contends that UCD's intent was to improve its competitiveness in the academic market, in that it wanted "to increase non-resident tuition revenue by attracting additional out-of-state and international students." (ECF No. 72-21 p. 12.) There is no dispute that the number of out-of-state students at UCD has increased since UCD implemented the Residency Requirement. (*See* ECF Nos. 75 p. 18, 72 p. 2.10.)

Faced with the parties' mutually exclusive versions of Defendant's motivations and purposes for entering into the 2004 and 2008 Agreement, neither of which is

6

implausible on its face, the Court finds that questions of fact exist as to whether Defendant and UCD intended to exclude competition in the student housing market. Because a reasonable jury could, on these facts, find that Defendant did not intend to exclude competition, summary judgment in Plaintiff's favor is appropriately denied on this basis alone.

**B.     Control Prices**

In addition, Plaintiff argues that by excluding competition, Defendant was able to control prices and charge the New Students "whatever it want[ed]" in rent. (ECF No. 80 p. 12.) Although Plaintiff has submitted evidence showing that rent at the Campus Village Apartments was a few thousand dollars more per academic year than rent at the Regency (ECF Nos. 72-32 p. 3, 72-33 pp. 2-3), it has not submitted evidence that Defendant "controlled" student housing prices or set rental prices free from competitive influence. Rather, the evidence shows that even students not subject to the Residency Requirement chose to live at the Campus Village Apartments instead of the Regency. (ECF No. 72-21 p. 10.) The evidence also shows that the Regency is located a few miles away from campus, while the Campus Village Apartments is located adjacent to campus. (ECF Nos. 75 p. 6, 75-9, 72-21 p. 12.) Viewing these facts in the light most favorable to Defendant, a reasonable jury could determine that the rent at Campus Village Apartments was competitive with similar student housing options in the market, especially given the marked difference in location and thus distance from campus of the two housing developments. Therefore, questions of fact exist as to whether Defendant controlled prices in the student housing market.

Given the Court's findings that questions of fact exist as to whether Defendant

had the requisite specific intent to monopolize, there is no need to examine the remaining three elements of the claim of conspiracy to monopolize.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment (ECF No. 71) is DENIED in its entirety.

Dated this 22nd day of January, 2014.

BY THE COURT:

_____
William J. Martínez
United States District Judge