IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  10-cv-02516-WJM-KLM

AURARIA STUDENT HOUSING AT THE REGENCY, LLC, a Colorado limited liability
company,

Plaintiff,

v.

CAMPUS VILLAGE APARTMENTS, LLC, a Delaware limited liability company,

Defendant.

---

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Auraria Student Housing at the Regency, LLC ("Plaintiff") brings this action against Campus Village Apartments, LLC ("Defendant").  Before this Court is Defendant's Motion for Summary Judgment under Federal Rule of Civil Procedure 56(a) ("Motion").  (ECF No. 137.)  For the reasons set forth below, Defendant's Motion is denied.

## I.  BACKGROUND

The relevant facts, in the light most favorable to Plaintiff, the nonmovant, are as follows.

Plaintiff leases and operates an apartment complex in Denver under the trade name The Regency - Auraria's Student Housing Community, LLC (the "Regency"). (ECF No. 72-4 ¶ 3.)  The Regency is dedicated to providing off-campus housing for students attending classes on the campus of the Auraria Higher Education Center campus ("Auraria Campus") in Denver.  (*Id.* ¶ 4.)  The Regency is located a few miles

away from the Auraria Campus.  (ECF Nos. 75 p. 6; 75-9.)

Defendant is a limited liability company whose sole member is the University of Colorado Real Estate Foundation ("CUREF").  (ECF No. 72-2 ¶ 2.)  Defendant owns the Campus Village Apartments, another apartment complex dedicated to providing off-campus housing for students at the Auraria Campus.  (*Id.* ¶¶ 2, 21.)  Campus Village Apartments is located on land adjacent to the Auraria Campus.  (ECF No. 72-21 p. 12.)

In response to a 2004 study that found that the Auraria Campus had a housing demand (ECF No. 72-5 p. 3), the University of Colorado Denver ("UCD") approached CUREF to construct student housing on land adjacent to campus.  (Def. Br. (ECF No. 138) p. 7.)  CUREF formed Defendant in order to construct the Campus Village Apartments. (ECF No. 72-21 p. 12.)

The Campus Village Apartments opened in time for the fall 2006 semester at UCD.  (Def. Br. p. 13.)  In order to minimize Defendant's risks associated with the new housing, UCD instituted a live-in requirement, whereby most full-time domestic freshmen and international students were required, during their first two semesters of enrollment at UCD, to reside at the Campus Village Apartments (the "Residency Requirement").  (ECF Nos. 72-11; 72-21 p. 12.)

In May 2008, UCD, CUREF, and Defendant entered into an operating agreement regarding the Campus Village Apartments (the "2008 Agreement").  (ECF Nos. 72-20; 72-21 p. 5.)  Pursuant to the 2008 Agreement, UCD agreed to continue enforcing the Residency Requirement.  (ECF No. 72-20 ¶ 2.1.)  In return, Defendant gave UCD students placement priority at the Campus Village Apartments with a specific number of beds dedicated each year for UCD students.  (*Id.* ¶ 2.3.)

2

Plaintiff alleges that from August 2006 through July 2014, the Regency lost $3,420,000 due to this, and other, agreements between Defendant and UCD.  (ECF No. 150-34 pp. R 00913, R 00920.)

On these facts, Plaintiff filed this action against Defendant on October 14, 2010.  (ECF No. 1.)  On February 7, 2011, Plaintiff filed an Amended Complaint alleging four claims for relief: (1) conspiracy to monopolize, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; (2) civil conspiracy; (3) interference with prospective business relations; and (4) interference with existing contractual relations.  (ECF No. 19 ¶¶ 70-88.)

On May 3, 2013, Plaintiff filed a Motion for Partial Summary Judgment on its first claim (conspiracy to monopolize) pursuant to Federal Rule of Civil Procedure 56.  (ECF No. 71.)  On January 22, 2014, the Court denied Plaintiff's Motion for Partial Summary Judgment, finding that questions of fact existed as to whether Defendant intended to exclude competition and control prices in the student housing market.  (ECF No. 136 at 6, 7.)

On January 30, 2014, Defendant filed the instant Motion seeking summary judgment on all of Plaintiff's claims.  (ECF No. 137.)  On March 17, 2014, Plaintiff filed its Opposition to Defendant's Motion (ECF No. 150), and Defendant filed its Reply on April 3, 2014 (ECF No. 156).  On August 21, 2014, Plaintiff filed an Unopposed Motion for Leave to Cite Supplemental Authority Relevant on Defendant's Motion for Summary Judgment (ECF No. 168), which was granted by the Court on August 21, 2014 (ECF No. 169).

This Motion is now ripe for resolution.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc*., 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party.  *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## III.  ANALYSIS

 Plaintiff alleges four causes of action: (1) conspiracy to monopolize, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 (the "Section 2 Claim"); (2) interference with prospective business relations; (3) interference with existing contractual relations; and (4) civil conspiracy.  (ECF No. 19 ¶¶ 70-88.)  Defendant moves for summary judgment on all of Plaintiff's claims.  (Def. Br. at 2-3.)

A.      **Section 2 Claim**

Section 2 of the Sherman Act prohibits conspiracy to monopolize any part of interstate trade or commerce.  15 U.S.C. § 2.  To succeed on a claim of conspiracy to monopolize, a plaintiff must establish: "(1) the existence of a combination or conspiracy to monopolize; (2) overt acts done in furtherance of the combination or conspiracy; (3) an effect upon an appreciable amount of interstate commerce; and (4) a specific intent to monopolize." *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1026 (10th Cir. 1992) (internal citation omitted).

Defendant argues that the Section 2 Claim should be dismissed because: (1) Plaintiff cannot show harm to competition because Plaintiff's agreement with UCD was a lawful tying arrangement; (2) there was no agreement between Defendant and UCD to create a monopoly; (3) neither UCD nor Campus Village had the specific intent to create a monopoly; and (4) both UCD and Campus Village acted for legitimate educational and business reasons.  (Def. Br. at 19.)  The Court will address each of Defendant's arguments in turn.

1.      Section 1 Tying Arrangement

Defendant first argues that its agreement with UCD is a lawful tying arrangement that does not harm the competitive process under 15 U.S.C. § 1 and, as such, Plaintiff cannot succeed on its Section 2 Claim.  (Def. Br. at 19-21 (citing *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 139 (1998) (explaining that a plaintiff who cannot show that an agreement harms the competitive process under Section 1 of the Sherman Act cannot succeed on a Section 2 conspiracy to monopolize claim); *Gregory v. Fort*

*Bridger Rendezvous Ass'n*, 448 F.3d 1195, 1206 (10th Cir. 2006) ("Because the Gregorys fail to establish that the FBRA's challenged conduct harmed the competitive process under § 1, their conspiracy to monopolize claim under § 2 likewise fails.").) Plaintiff, however, argues that the agreement between Defendant and UCD is not a tying arrangement, and accordingly, that Defendant's affirmative defense is not relevant to its Section 2 Claim.  (Pl. Br. (ECF No. 150) at 36-38; ECF No. 150-10 p. 6.)

 "A tying arrangement is an agreement by a party to sell one product but only on the condition that the buyer also purchase a different (or tied) product." *Eastman Kodak v. Image Technical Servs., Inc.*, 504 U.S. 451, 461 (1992) (internal citation and quotation mark omitted).  "A tie-in constitutes a per se Section 1 violation if the seller has appreciable economic power in the tying product market and if the arrangement affects a substantial volume of commerce in the tied product market." *Multistate Legal Studies, Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc.*, 63 F.3d 1540, 1546 (10th Cir. 1995).  The elements of a per se unlawful tying arrangement, therefore, are: (1) two separate products; (2) a tie or conditioning of the sale of one product on the purchase of another; (3) sufficient economic power in the tying product market; and (4) a substantial volume of commerce affected in the tied product market.  *Id.* at 1546-47. Evaluation of the relevant market requires evidence of both a product market and geographic market.  *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1024 (10th Cir. 2002). Thus, without this market evidence, a tying arrangement is not unlawful under 15 U.S.C. § 1.

As the movant, Defendant "must submit evidence to establish every essential element of its claim or affirmative defense." *Carpenter v. Allstate Ins. Co.*, 2008 WL 554757, at *1 (D. Colo. Feb. 28, 2008).  Here, however, Defendant has not introduced evidence defining the relevant market.[1]  As such, the Court cannot determine whether the agreement between Defendant and UCD is a lawful tying arrangement. Furthermore, the absence of this evidence prevents the Court from determining, as a matter of law, whether UCD has appreciable economic power, and thus, whether Defendant's agreement with UCD harms the competitive process for purposes of Plaintiff's Section 2 Claim.[2]  *See Gregory*, 448 F.3d at 1206.  Accordingly, the Court finds that Defendant has failed to meet its burden.

Defendant cites authority holding that similar mandatory housing requirements were upheld where the defendant university owned the housing facility.  (ECF No. 156 at 13-14.)  Although Defendant's argument is compelling, Defendant has not offered

---

[1]   Defendant merely argues Plaintiff "has no evidence that UCD, as the 'seller' of the tying product (higher education) has market power or operates in a non-competitive market." (Def. Br. at 21) (noting that UCD's has a 1.88% market share of first-time college students in Colorado).)  Plaintiff also has not introduced evidence defining the relevant market, arguing instead that since Defendant's agreement with UCD is not a tying arrangement, whether or not UCD has market power is irrelevant to Plaintiff's Section 2 Claim.  (Pl. Br. at 36 (citing *See Salco Corp. v. Gen. Motors Corp.*, 517 F.2d 567, 576 (10th Cir. 1975) ("Specific intent to monopolize is the heart of a conspiracy [to monopolize] charge [under 15 U.S.C. § 2], and a plaintiff is not required to prove what is the 'relevant market.'").)

[2]   The Court also notes that additional questions of fact exist as to whether a substantial amount of commerce in the tied product (Campus Village Housing) is involved.  *See Multistate Legal Studies.*, 63 F.3d at 1546.  This is evaluated in terms of dollar volume, not market percentage.  *In re Cox Enters., Inc. Set-Top Cable Television Box Antitrust Litig.*, 2014 WL 104964, at *11 (W.D. Okla. Jan. 9, 2014); *see also* (ECF No. 150-34 pp. R 00913, R 00920 (alleging that from August 2006 through July 2014, the Regency lost $3,420,000 due to the agreement between Defendant and UCD)); (ECF No. 133 at 7) (disputing this calculation).

any authority extending a lawful tying arrangement to the situation here, where a university requires its students to live in housing owned not by the university itself, but by a private third-party.  *Cf. Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 86-87 (2d Cir. 2000) (finding that Yale College's policy requiring students to live in co-educational residence halls was not an illegal tying arrangement); *Delta Kappa Epsilon (DKE) Alumni Corp. v. Colgate Univ.*, 492 F. Supp. 2d 106, 117 (N.D.N.Y. 2007) (finding policy requiring students live in University-owned housing was not a monopolistic tying arrangement); *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*, 106 F.Supp.2d 406, 413 (N.D.N.Y.2000) (rejecting monopolization challenge to college's required housing and meal programs).

Accordingly, Defendant is not entitled to summary judgment based on its affirmative defense of a lawful tying arrangement.

2.     Section 2 Conspiracy to Monopolize

Defendant next argues that summary judgment is appropriate because: (1) there was no agreement between Defendant and UCD to create a monopoly; (2) neither UCD nor Campus Village had the specific intent to create a monopoly; and (3) both UCD and Campus Village acted for legitimate educational and business reasons.  (Def. Br. at 19.)

In the Court's January 22, 2014 Order denying Plaintiff's Motion for Partial Summary Judgment (ECF No. 136), the Court found that questions of fact existed as to Plaintiff's Section 2 Claim (*Id.* at 7-8), thus precluding the granting of Plaintiff's motion. The Court herein adopts and incorporates its findings and conclusions from said Order. Specifically, the Court found that "questions of fact exist as to whether Defendant and

8

UCD intended to exclude competition in the student housing market" and "as to whether Defendant controlled prices in the student housing market." (*Id.* at 7.)  Defendant has not submitted any evidence resolving the questions of fact regarding its intent to exclude competition.  (*See* Def. Br. at 25-26.)  Additionally, although Defendant submitted evidence explaining that it considered housing rates charged by other local universities before setting the rental rates at Campus Village Apartments (ECF No. 138-6 pp. 197:10-13, 198:5-21), it did not submit evidence showing that these rates were competitive with those universities.  The Court, therefore, finds that these questions of material fact still exist.

Accordingly, Defendant is not entitled to summary judgment on Plaintiff's Section 2 Claim.

**B.    State Law Claims**

Defendant also moves for summary judgment on Plaintiff's state law claims for interference with prospective business relations, interference with existing contractual relations, and civil conspiracy.  (Def. Br. at 29-33.)

1.    <u>Tortious Interference With Contractual and Prospective Business Relations</u>

Plaintiff alleges that Defendant, through its violation of the Sherman Act, tortiously interfered with its existing contractual relations and prospective business relations.  (ECF No. 19 ¶¶ 80-88.)  To establish a claim for tortious interference with contractual relations, Plaintiff must show that: (1) it had a contract with a third party; (2) defendant knew of the contract's existence; (3) defendant intentionally induced the third party to breach the existing contract; (4) defendant acted improperly; and (5)

9

defendant's actions caused plaintiff to incur damages.  *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1122 (10th Cir. 2008).  "Tortious interference with prospective business relations requires identical elements, with the exception that an existing contract need not be alleged.  Rather, [Plaintiff] must show that there was a reasonable likelihood that a contract would have resulted but for the wrongful interference."  *Id.*

Defendant argues that Plaintiff cannot show that Defendant acted improperly with its prospective or current business relations.  (Def. Br. at 30.)  Plaintiff, however, argues that Defendant used the improper means of conspiracy to monopolize, an antitrust violation, to interfere with Plaintiff's prospective business or existing contractual relations with tenants.  (Pl. Br. at 38.)  Whether Defendant's conduct was improper depends largely on Plaintiff's success in proving its Section 2 Claim at trial.  *See Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*, 311 F. Supp. 2d 1048, 1119 (D. Colo. 2004).  Plaintiff's allegations of improper conduct, therefore, survive summary judgment on its tortious interference claims.  *See id.* (denying summary judgment on tortious interference with prospective relations claim where the defendant's conduct, if proven at trial to be an illegal tying agreement, would have been improper).

2.   Civil Conspiracy

To establish a claim for civil conspiracy, a plaintiff must show by a preponderance of the evidence that there exists: (1) an object to be accomplished; (2) an agreement by two or more persons on a course of action to accomplish that object;

(3) in furtherance of that course of action, one or more unlawful acts which were performed to accomplish a lawful or unlawful goal, or one or more lawful acts which were performed to accomplish an unlawful goal; and (4) damages to the plaintiff as a proximate result. *Double Oak Constr. v. Cornerstone Dev. Int'l*, 97 P.3d 140, 146 (Colo. Ct. App. 2003). "In a civil action, conspiracy is a derivative cause of action that is not actionable *per se.*" *Id.* "[T]he essence of a civil conspiracy claim is not the conspiracy itself, but the actual damages resulting from the acts done in furtherance of the conspiracy." *Resolution Trust Corp. v. Heiserman*, 898 P.2d 1049, 1055 (Colo. 1995). "If the acts alleged to constitute the underlying wrong provide no cause of action, then there is no cause of action for the conspiracy itself." *Double Oak*, 97 P.3d at 146.

"[T]he required proof for a conspiracy under Colorado common law is essentially the same as the proof required for a conspiracy under § 1 of the Sherman Act." *Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*, 2008 WL 622815, at *16 (D. Colo. Mar. 4, 2008) *aff'd*, 582 F.3d 1216 (10th Cir. 2009). The Court has already determined that questions of fact exist as to whether Defendant's agreement with UCD is a permissible tying arrangement under 15 U.S.C. § 1. Accordingly, for the same reasons Defendant is not entitled to summary judgment on its tying arrangement defense, Defendant is also not entitled to summary judgment on Plaintiff's common law civil conspiracy claim. *See id.*

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 137) is DENIED in its entirety.

Dated this 8th day of September, 2014.

BY THE COURT:

_____
William J. Martínez
United States District Judge