IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  10-cv-02516-WJM-KLM

AURARIA STUDENT HOUSING AT THE REGENCY, LLC, a Colorado limited liability
company,

       Plaintiff,

v.

CAMPUS VILLAGE APARTMENTS, LLC, a Delaware limited liability company,

       Defendant.

---

**ORDER GRANTING IN PART DEFENDANT'S MOTIONS TO
EXCLUDE EXPERT REPORTS AND DEFENDANT'S MOTION TO STRIKE**

---

       Plaintiff Auraria Student Housing at the Regency, LLC ("Plaintiff") brings this

action against Campus Village Apartments, LLC ("Defendant").  This matter is before

the Court on the following motions: Defendant's Motion to Strike the "Rebuttal" Report

on Damages by Dr. Owen R. Phillips and Exclude the Opinions Expressed in that

Report ("Phillips Damages Motion") (ECF No. 129), Defendant's Motion to Exclude the

Expert Report and Testimony of Gregory B. Taylor Pursuant to Federal Rule of

Evidence 702 ("Taylor Motion") (ECF No. 132), and Defendant's Motion to Exclude the

"Economic Report of Owen R. Phillips, Ph.D." and the "Supplemental Economic Report

of Owen R. Phillips, Ph.D." Pursuant to Federal Rules of Evidence 702 and 703

("Phillips Economic Reports Motion") (ECF No. 134).  For the reasons set forth below,

Defendant's Motions are granted in part and denied in part.

### I.  LEGAL STANDARD

       A district court must act as a "gatekeeper" in admitting or excluding expert

testimony.  *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004).  Admission

of expert testimony is governed by Rule 702, which provides:

> If scientific, technical, or other specialized knowledge will
> assist the trier of fact to understand the evidence or to
> determine a fact in issue, a witness qualified as an expert by
> knowledge, skill, experience, training, or education, may
> testify thereto in the form of an opinion or otherwise, if (1)
> the testimony is based upon sufficient facts or data, (2) the
> testimony is the product of reliable principles and methods,
> and (3) the witness has applied the principles and methods
> reliably to the facts of the case.

Fed. R. Evid. 702.

The proponent of the expert testimony bears the burden of proving the

foundational requirements of Rule 702 by a preponderance of the evidence.  *United*

*States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

## II.  ANALYSIS

Defendant moves to exclude portions of the expert testimony and the expert

reports of Mr. Taylor and Dr. Phillips.  Both Mr. Taylor and Dr. Phillips have been

offered as experts regarding Plaintiff's damages, and have each prepared a report on

that issue (the "Damages Reports").  (*See* ECF Nos. 133-2; 130-2.)  Dr. Phillips is also

being offered as an economics expert.  (*See* ECF Nos. 135-2; 135-3.)  The Court will

discuss the Damages Reports and Dr. Phillips's economic reports in turn below.

## A.     Damages Reports

Defendant moves to strike the Report on Damages with Different Discount Rates

by Dr. Phillips (the "Phillips Damages Report") pursuant to Federal Rule of Civil

Procedure 37(c)(1) on the basis that it was untimely disclosed under Rule 26(a)(2).

(ECF No. 130 at 3.)  Defendant also moves to exclude Mr. Taylor and Dr. Phillips's testimony regarding the present value of Plaintiff's damages, arguing that the alleged damages are actually prejudgment interest, which is not available under 15 U.S.C. § 2. (ECF Nos. 133 at 8-9; 130 at 4-9.)  Finally, Defendant contends that the expert opinion of Mr. Taylor is not based on sufficient facts, data, or methodology, and is outside the scope of his expertise.  (ECF No. 133 at 4-7.)  The Court will address each of Defendant's arguments in turn.

1.  Timeliness of the Phillips Damages Report

The parties were required to designate their affirmative experts and disclose expert reports before September 27, 2013.  (ECF Nos. 70; 108.)  Defendant did not designate an affirmative expert on damages.  (ECF No. 130 at 2.)  On November 1, 2013, the day rebuttal designations were due, Plaintiff disclosed Dr. Phillips as an expert, and served Defendant with the Phillips Damages Report.  (ECF Nos. 108; 130-4.)  Defendant now moves to strike the Phillips Damages Report pursuant to Rule 37(c)(1) on the basis that it was untimely disclosed pursuant to Rule 26(a)(2).  (ECF No. 130 at 3.)

Although Rule 26(a)(2)(D) governs the timing of expert report disclosures, Rule 37(c)(1) specifies the Court's authority to strike expert testimony based on an untimely disclosure.  *See e.g., Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 952 (10th Cir. 2002) (holding that "Rule 37(c) permits a district court to refuse to strike expert reports and allow expert testimony even when the expert report violates Rule 26(a) if the violation is justified or harmless.").  Rule 37(c)(1) provides that a failure to comply with Rule 26(a) precludes the use of the expert information at issue "to supply evidence on a

motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).  The Court must consider four factors in determining whether the failure to timely disclose is substantially justified or harmless: (1) the prejudice or surprise to the impacted party; (2) the ability to cure the prejudice; (3) the potential for trial disruption; and (4) the erring party's bad faith or willfulness. *Id.* "'The burden of establishing substantial justification and harmlessness is upon the party who is claimed to have failed to make the required disclosures.'" *See Contour PAK, Inc. v. Expedice, Inc.*, 2009 WL 2490138, at *1 (D. Colo. Aug.14, 2009) (quoting *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 680 (D. Kan.1995)).

The parties agree that the Phillips Damages Report is not a true rebuttal report because Defendant did not designate an affirmative expert on damages.  (ECF Nos. 130 at 2-3; 142 at 6.)  Plaintiff, however, argues that the November 1, 2013 deadline was not solely limited to disclosure of experts designated in rebuttal, because the Scheduling Order notes that a rebuttal designation "is not intended to and does not preclude the use of such expert[] or information during the sponsoring party's case-in-chief at trial."  (ECF No. 142 at 6 (modification in original) (quoting ECF No. 70 at 12-13).)  Plaintiff reads the Scheduling Order to mean that the parties were required to "provide opposing counsel with *all* information specified in [Rule] 26(a)(2)" by November 1, 2013, and thus could timely disclose affirmative expert reports on that date.  (ECF No. 142 at 6 (quoting ECF No. 70 at 12) (emphasis added).)

4

This is an illogical interpretation of the Scheduling Order.  Language in such Order which allows a party to use a rebuttal expert or rebuttal report in its case-in-chief does not come close to meaning that, in addition, a party may also disclose an affirmative expert on the day that rebuttal designations are due.  This makes irrelevant the affirmative expert disclosure deadline, circumvents the Scheduling Order, and prohibits the other party from offering their own rebuttal expert.

Accordingly, the Court finds that the Phillips Damages Report was untimely disclosed and violates Rule 26(a).  Such a finding does not, however, conclude the relevant analysis.  The Court may nonetheless decline to strike the rebuttal report if the timeliness violation was substantially justified or harmless.  Applying the four *Woodworker's Supply* factors here, the Court finds that Plaintiff's failure to timely disclose Dr. Phillips as an expert was harmless.  *See* 170 F.3d at 993.  Regarding the first factor, prejudice to the impacted party, the Court finds minimal prejudice to Defendant as a result of the late disclosures.  When the Phillips Damages Report was disclosed, a trial date had not been set and discovery was ongoing.  (ECF Nos. 163; 118.)  Defendant had ample time after the disclosure to request modifications of other case deadlines that were affected by the late disclosure, yet Defendant did not seek additional time to designate a rebuttal expert.  For these reasons, the Court finds that the late disclosure of the Phillips Damages Report has resulted in minimal prejudice to Defendant.

Regarding the second factor, the Court finds that the minimal prejudice caused by the late disclosure does not need to be cured.  Because discovery did not close for

more than two and a half months after the Phillips Damages Report was disclosed,[1] Defendant had more than sufficient time to depose Mr. Phillips.  Defendant, however, chose not to do so.[2]

With respect to the third factor, there appears to be very little potential for trial disruption as a result of the untimely disclosures.  Trial has been set for January of 2015, over a year after the Phillips Damages Report was disclosed, and Defendant has chosen not to depose Mr. Phillips.

Finally, with respect to the fourth factor, the Court finds that there is insufficient evidence of bad faith or willfulness surrounding Plaintiff's untimely disclosure of the Phillips Damages Report.  Although the Court finds Plaintiff's reasoning for its untimely disclosure to be without any legal support, Plaintiff's faulty judgment in this regard is not a basis upon which this Court can reasonably conclude that the delay was willful or undertaken in bad faith.

Considering the four *Woodworker's Supply* factors together, the Court finds that Plaintiff's untimely disclosures of the Phillips Damages Report is "harmless" such that the report should not be stricken pursuant to Rule 37(c)(1).  Although Rule 37(c)(1) authorizes other sanctions for late disclosures besides striking the information, Defendant has not requested any alternative sanction here, and as a consequence none shall be imposed.

---

[1]   Discovery was ultimately extended through January 17, 2014.  (ECF No. 124.)

[2]   The parties confirmed, via a telephonic conference with Chambers, that Defendant did not depose Dr. Phillips or Mr. Taylor.

2.    Prejudgment Interest

Defendant next challenges the contents of the Damages Reports, contending that they contain calculations of prejudgment interest, which is not available in Section 2 antitrust cases.  (ECF No. 133 at 8.)  The Phillips Damages Report sought to "calculat[e] the opportunity cost of lost profits in this case."  (ECF No. 130-2 at 4.)  Dr. Phillips was asked by Plaintiff "to provide an opinion on appropriate interest rates for damage calculations and to provide alternative damage estimates at different interest rates for purposes of comparison."  (*Id.* at 2.)  His reports explain that, in a table he created, he used "discount rates"[3] to "determine the lost interest earnings on the profit that Regency lost."  (*Id.* at 3.)  The final column of this table represents total loss, which "includes the profit loss, plus the lost interest earnings."  (*Id.*)  The Taylor Report includes a similar "discount rate" of 8%.  (ECF No. 133-2 at 7 ("I have calculated lost earnings at 8% annually on the lost profits utilizing the approximate mid point of each academic year (December 31)."); ECF No. 130-2 ("Mr. Taylor also presented the total lost earnings on lost profits assuming an 8% discount rate.").)  Mr. Taylor does not explain how or why he determined that 8% was an appropriate rate,[4] and Plaintiff merely argues that the rate is "conservative" as compared to the rates used by Dr.

---

[3]  Although Dr. Phillips refers to his interest rate as a "discount rate," it does not result in a discount in the common meaning of the word.  *See Hoskie v. United States*, 666 F.2d 1353, 1354 (10th Cir. 1981) (explaining that the discount rate reduces an award for future loss to its present value).  Dr. Phillips, instead, used the rate to adjust past damages upward to an increased present value.  *See  Contract Lodging Corp. v. Union Pac. R.R.*, 1991 WL 278482, at *2 (D. Kan. Dec. 19, 1991) (applying a discount rate to both past and future lost profits).

[4]  The Court notes that 8% is the statutory rate for prejudgment interest under Colorado law.  *See* C.R.S. § 5-12-102(1); *Allison v. Bank One-Denver*, 289 F.3d 1223, 1244 (10th Cir. 2002).

Phillips.  (*See* ECF No. 148 at 14 (referring to ECF No. 142 at 2 n.2 ("This latter figure is somewhat larger than the number resulting from Mr. Taylor's 8% calculation[.]").)

Defendant argues that the inclusion of these "discount rates" is "simply pre-judgment interest by another name."  (ECF No. 133 at 9.)  Plaintiff argues that prejudgment interest and lost earnings on lost profits are distinct concepts.  (ECF No. 142 at 4-6.)

The availability of prejudgment interest in antitrust cases is "limited to situations in which a litigant has acted in bad faith to delay the proceedings."  *Law v. Nat'l Collegiate Athletic Ass'n*, 185 F.R.D. 324, 346 (D. Kan. 1999); *see also* 15 U.S.C. § 15(a).  Prejudgment inflation of damages is disallowed where "the adjustments amount to nothing more than bare interest."  *Multiflex, Inc. v. Samuel Moore & Co.*, 709 F.2d 980, 996 (5th Cir. 1983)*; see also Concord Boat Corp. v. Brunswick Corp.*, 21 F. Supp. 2d 923, 935 (E.D. Ark. 1998) ("It is well settled that prejudgment interest is not recoverable in an antitrust case.").

Plaintiff argues that several cases have held that testimony regarding the present value of past economic harm is permissible in antitrust cases because it does not involve prejudgment interest on a liquidated sum.  (ECF No. 142 at 5 (citing *Weyland v. Birkholz*, 2008 WL 649602, at *1 (E.D. Ky. Jan. 10, 2008); *Multiflex*, 709 F.2d at 997 ("[W]e find that the claims were made to reflect what the asserted lost profits would have earned in an open investment market, not as a statutory claim for prejudgment interest."); *Heatransfer Corp. v. Volkswagenwerk, A. G.*, 553 F.2d 964, 987 n.20 (5th Cir. 1977).)  Other courts, however, have held that these cases "were decided

8

erroneously" and that "[t]he difference between 'present value' damages and pre-judgment interest is one of terminology rather than substance." *In re Linerboard Antitrust Litig.*, 504 F. Supp. 2d 38, 65-66 & n.16, n.17 (E.D. Pa. 2007) (citing Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 392a, at 493-94 (2d. ed. 2003) (noting that a present value damage award "may seem fair" but "is nonetheless equivalent to an award of pre-judgment interest"); *see also Library of Congress v. Shaw*, 478 U.S. 310, 321-22 (1986) (noting that "the force of the no-interest rule cannot be avoided simply by devising a new name for an old institution"); *Pacific Gas & Electric Co. v. Howard P. Foley Co.*, 1993 WL 299219, *2 (N.D. Cal. July 27, 1993) ("[A] plaintiff cannot circumvent the general rule by engaging in semantic subterfuge.").

The Court agrees with the latter analysis, and finds that the experts' calculations of "discount rates", "opportunity cost", and "present value of past economic harm" are in substance nothing other than calculations of prejudgment interest employing different nomenclature. Such interest may not be awarded in the instant case without a showing of bad faith, which has not been alleged here. *See* 15 U.S.C. § 15(a). Accordingly, the Court grants in part the Taylor Motion and Phillips Damages Motion with regard to Mr. Taylor and Dr. Phillips's proffered testimony, and hereby orders that neither Mr. Taylor nor Dr. Phillips will be permitted to provide expert testimony at trial regarding any prejudgment interest of Plaintiff's damages, regardless of the term used by Plaintiff or its experts for such calculations.

3.     Mr. Taylor - Reliability

Defendant also moves to exclude Mr. Taylor's opinions because of Mr. Taylor's assumption "that the percentage of full-time UCD freshmen students that would have chosen to live at the Regency . . . would likely be comparable to the percentage of full-time Metro and CCD freshmen living at the Regency."  (ECF No. 133-2 at 6.) Defendant argues that Mr. Taylor provides no basis for his assumption, and does not identify any methodology that supports his opinion.  (ECF No. 133 at 4-7.)

An expert witness may use assumptions in addition to facts to formulate his opinion, and the use of such assumptions does not make the opinion inadmissible. *See United States v. Crabbe*, 556 F. Supp. 2d 1217, 1224 (D. Colo. 2008) ("Reliance on assumptions does not necessarily preclude the opinion from having an adequate foundation under Rule 702.  The accuracy of the assumption is not at issue for Rule 702 purposes . . . .  The accuracy of the assumption is an issue for trial because it affects the weight of the opinion.").  Defendant does not argue that Mr. Taylor presents his assumptions as facts or that he has failed to sufficiently identify his assumptions as such.  *Cf. Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1080 n.4. (10th Cir. 2006) ("Expert testimony that fails to make clear that certain facts the expert describes as true are merely assumed for the purpose of [the opinion] may not assist the trier of fact at all and, instead, may simply result in confusion.").

The Court finds that Defendant's argument goes to the weight the jury should attribute to Mr. Taylor's testimony, rather than to the admissibility of such testimony under Rule 702.  Mr. Taylor's opinion is, therefore, not inadmissible on that basis, and Defendant's arguments can be addressed by vigorous cross-examination at trial.  *See*

10

*Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 596 (1993).

**B.    Phillips Economic Reports**

Defendant moves to exclude Dr. Phillips's testimony with respect to certain opinions contained in his Economic Report and Supplemental Economic Report of Dr. Phillips (the "Phillips Economic Reports"), arguing that Dr. Phillips analyzed the wrong sample population.  (ECF NO. 135 at 2-5.)  The challenged testimony also includes his opinions regarding Defendant's economic motivation, UCD's ability to force or coerce its students to live at the Campus Village Apartments, and the harm to the competitiveness of the market caused by UCD's referral agreement with Defendant.  (*Id.* at 5-10, 12-13.) Defendant also argues that the Phillips Economic Reports impermissibly relies on hearsay in the form of anonymous internet reviews.  (*Id.* at 10-11.)  The Court will address each of Defendant's arguments in turn.

1.    Sample Population

Defendant argues that Dr. Phillips's statistical analysis is unreliable because Dr. Phillips analyzed the wrong sample population.  (ECF NO. 135 at 2-5.)  Dr. Phillips analyzed the overall retention and graduate rates for the entire first-year class of the University of Colorado Denver ("UCD") from 2000-2011 to determine the percentage of students who both continued on to their second year and graduated in four years. (ECF Nos. 135-2 at 6-7; 144-6 at 9.)  Dr. Phillips sought to determine if there was a significant difference in freshman retention rates after the live-in requirement was implemented in 2006.  (ECF No. 135-2 at 7.)

Defendant argues that the relevant population for such a determination should be limited to students who lived at the Campus Village Apartments during their first year at UCD, because most UCD freshmen do not live at the apartments.  (ECF No. 135 at 3.)  Plaintiff argues in response that Dr. Phillips's statistical analysis is reliable because UCD's goal was to improve overall UCD retention and graduation rates, not just the rates of students living at the Campus Village Apartments.  (ECF No. 144 at 3-4.)

The Court finds that Defendant's argument about Dr. Phillips's statistical analysis goes to the weight the jury should afford his opinions rather than to their admissibility. *See Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1544 (10th Cir. 1996) ("Technical or methodological deficiencies in the survey, including the sufficiency of the universe sampled, bear on the weight of the evidence, not the survey's admissibility.").  The arguments made by Defendant do not lead the Court to conclude that Dr. Phillips's opinions are altogether inadmissible.  Defendant is, of course, free to explore the purported weaknesses in Dr. Phillips's analysis of these issues during cross-examination at trial.

2.     Opinions Regarding Economic Motivation

Defendant moves to exclude Dr. Phillips's opinions that Campus Village had an "economic motive" and that the residency requirement was "financially motivated", arguing that these opinions are unhelpful to the jury and misleading, and not the subject of specialized knowledge.  (ECF No. 135 at 5.)  Plaintiff argues that economic and financial motivation is a proper concern of antitrust economics, especially Section 2 cases, which include an element of specific intent.  (ECF No. 144 at 6.)

The Court questions the admissibility of this testimony.  While Dr. Phillips could likely testify as to the economic impact of the agreement between UCD and Defendant, and the jury may use this evidence to infer Defendant's motivation for that decision, Dr. Phillips is certainly not qualified to directly opine about Defendant's motivation for its actions.  *See SolidFX, LLC v. Jeppesen Sanderson, Inc.*, 2014 WL 983507, at *2 (D. Colo. Mar. 13, 2014) (explaining that Dr. Phillips was prohibited from testifying regarding a defendant's motivation for its actions as such opinion was outside the scope of his expertise).

At trial, Dr. Phillips will be permitted to testify regarding his opinion as to the various alleged economic benefits Defendant stood to gain as a result of the relevant course of conduct it undertook.  But the Court will not permit Dr. Phillips to testify as to his opinion of the motivation or intent on the part of Defendant for engaging in the actions challenged in this litigation.

3.   Opinions Regarding Coercing, Forcing and Guaranteeing

Defendant also moves to exclude Dr. Phillips's opinions that UCD could "force" or "coerce" its students to live at the Campus Village Apartments and that it "guarantees" occupancy.  (ECF No. 135 at 7.)  Defendant argues that Dr. Phillips does not offer facts, data, or methodology to explain how UCD could do this, especially when UCD does not have market power.  (*Id.* at 7-8.)  Plaintiff focuses on the relevance of these opinions, and argues that these statements address the essence of Plaintiff's antitrust claim.  (ECF No. 144 at 7.)

Defendant has taken the position in this action that UCD does not have the market power to "force" or "coerce" prospective students to live at the Campus Village

13

Apartments, and that the agreement between UCD and Defendant is, therefore, a lawful tying arrangement.  (ECF No. 138 at 21.)  Dr. Phillips's proposed testimony comes close to stating the ultimate legal conclusion in this aspect of the case.  *See United States v. Bedford*, 536 F.3d 1148, 1158 (10th Cir. 2008) ("An expert may not state legal conclusions drawn by applying the law to the facts[.]") (internal citation and quotation marks omitted).

Accordingly, Dr. Phillips will be precluded from testifying at trial as to any legal conclusions regarding the essential elements of Plaintiff's conspiracy to monopolize claim or Defendant's lawful tying arrangement affirmative defense, such as that UCD "forced" or "coerced" its first-year students to live at the Campus Village Apartments.

4.   Opinions Regarding Referral Agreement

Defendant also moves to exclude Dr. Phillips's opinion that UCD's referral agreement with Defendant impacts the housing market for upperclassmen and, as such, damages competitiveness in the market.  (ECF No. 135 at 12.)  Defendant argues that Plaintiff has not asserted any claims regarding the University's referral agreement, and any opinions relating to such agreement are, therefore, irrelevant and should be excluded.  (*Id.*)  Plaintiff argues that the referral agreement is referenced in the Complaint, both directly and incorporated by reference.  (ECF No. 144 at 9-10 (citing ECF No. 19 ¶¶ 22.c, 70, 75, 80 and 85).)

The referral agreement is part of a letter agreement between UCD and Defendant (the "2004 Agreement"), and provides that UCD would exclusively refer students to the Campus Village Apartments.  (ECF No. 19 ¶ 22.)  The Court finds the referral agreement is relevant to Plaintiff's conspiracy to monopolize claim, which is

14

based primarily on the 2004 Agreement.

Whether or not the referral agreement had an impact on housing goes to the weight the jury should afford Dr. Phillips's testimony rather than the admissibility of such testimony.  Mr. Phillips's opinion is, therefore, not inadmissible on that basis, and Defendant's arguments can be addressed by vigorous cross-examination.  See *Daubert*, 509 U.S. at 596.

5.   Surveys

Defendant moves to exclude as hearsay the internet reviews of the Campus Village Apartments, which appeared on a website apartmentratings.com, and a survey conducted by UCD in 2011 (the "2012 Report"), both of which Dr. Phillips cites in his report.  (ECF No. 135 at 10.)  Defendant also argues that these comments are not the type of material ordinarily relied upon by an expert and that Dr. Phillips is not applying specialized knowledge or methodology.  (*Id.* at 11.)  The Court will discuss the internet reviews and the 2012 Report in turn below.

a.   *Online Comments*

Courts have typically admitted into evidence anonymous online comments only in cases in which a party's notice of a particular problem is a key issue in the case. *See, e.g., Guild v. Gen. Motors Corp.*, 53 F. Supp. 2d 363, 368 (W.D.N.Y.1999) (holding evidence of customer complaints was inadmissible to show a defect, but was admissible to show notice assuming a proper foundation is established and assuming the defendant contested the issue of notice).  This case is readily distinguishable in that resident satisfaction is not a key merits issue.

Online comments, such as those on apartmentratings.com, are "inherently unreliable." *SolidFX, LLC v. Jeppesen Sanderson, Inc.*, 2014 WL 1319361, at *5 (D. Colo. Apr. 2, 2014); *see also Doe v. Kamehameha Sch.*, 2008 WL 5423191, at *4 (D. Haw. Dec. 31, 2008) (noting that, under the veil of anonymity, internet users will "make outrageous, offensive, and even nonsensical statements" because "the public may never know their true identities").  Defendant has no way of testing who made the comments, the bases for these comments, or even verifying that the comments were not made by Plaintiff or its representatives.

Accordingly, these anonymous online comments are not admissible under Rule 703.  *See SolidFX*, 2014 WL 1319361, at *5.  The Court finds it difficult to believe that a qualified expert could credibly testify that anonymous online comments are the type of evidence that is typically relied upon by an expert in their field.  Moreover, the Court finds that the possibility that the jury may misuse this otherwise inadmissible evidence outweighs any possible need to admit the evidence to support the expert opinions.  *See id*.

Accordingly, the Court will not permit Plaintiff to admit these online customer reviews into evidence at trial.

  b.  *2012 Report*

The Tenth Circuit allows "the admission of survey evidence as an exception to the hearsay rule if the survey is material, more probative on the issue than other evidence and if it has guarantees of trustworthiness." *Harolds Stores*, 82 F.3d at 1544 (internal citation and quotation marks omitted).  The 2012 Report, however, is not a true

"survey" that was designed and conducted by an expert.  *See, e.g.*, *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1124 (D. Colo. 2006) ("The Survey Report describes a public opinion survey Drs. Flynn and Slovic designed to assess the public's perception of Rocky Flats and its effect on the desirability and value of properties in the Class Area.").[5]  Rather, the 2012 Report is a document from UCD relating to a survey that was conducted, presumably by the University, in December 2011.  (ECF No. 135-3 at 4.)  Plaintiff has not established that the 2012 Report is the type of document that experts reasonably rely upon in the field.  Instead, Plaintiff makes only general statements that economists often rely on consumer surveys about product demand.  (*See* ECF Nos. 144 at 9; 144-6 at 6.)  The Court, therefore, finds that the 2012 Report is not an exception to the hearsay rule.  Moreover, the Court finds that the possibility that the jury may misuse the otherwise inadmissible evidence outweighs any need to admit the evidence to support the expert opinions.

Accordingly, the Court will not permit Plaintiff to admit the 2012 Report into evidence at trial.

---

[5]  *See also  Handbook of Recommended Procedures for the Trial of Protracted Cases*, 25 F.R.D. 351, 429 ("The offeror has the burden of establishing that a proffered poll was conducted in accordance with accepted principles of survey research, *i.e.*, that the proper universe was examined, that a representative sample was drawn from that universe, and that the mode of questioning the interviewees was correct. He should be required to show that: the persons conducting the survey were recognized experts; the data gathered was accurately reported; the sample design, the questionnaire and the interviewing were in accordance with generally accepted standards of objective procedure and statistics in the field of such surveys; the sample design and the interviews were conducted independently of the attorneys; and the interviewers, trained in this field, had no knowledge of the litigation or the purposes for which the survey was to be used.  Normally this showing will be made through the testimony of the persons responsible for the various parts of the survey.").

### III.  CONCLUSION

Accordingly, the Court ORDERS as follows:

1.    Defendant's Motion to Strike the "Rebuttal" Report on Damages by Dr.
      Owen R. Phillips and Exclude the Opinions Expressed in that Report (ECF
      No. 129) is GRANTED IN PART and DENIED IN PART as set forth
      herein;

2.    Defendant's Motion to Exclude the Expert Report and Testimony of
      Gregory B. Taylor Pursuant to Federal Rule of Evidence 702 (ECF No.
      132) is GRANTED IN PART and DENIED IN PART as set forth herein;

3.    Defendant's Motion to Exclude the "Economic Report of Owen R. Phillips,
      Ph.D" and the "Supplemental Economic Report of Owen R. Phillips, Ph.D"
      Pursuant to Federal Rules of Evidence 702 and 703 (ECF No. 134) is
      GRANTED IN PART and DENIED IN PART as set forth herein; and

4.    The parties are hereby ON NOTICE that the Court's rulings on the instant
      Motions are not self-executing and the parties will be expected to raise a
      timely objection at trial if the opposing party violates any portion of this
      Order.

Dated this 18th day of September, 2014.

                                         BY THE COURT:

                                         _____
                                         William J. Martínez
                                         United States District Judge